Our last case for argument today is 25-1362, VIAVI Solutions v. Platinum Optics. Ms. Woodworth, please proceed. Thank you, Your Honor, and may it please the Court. We recognize that the District Court's exceptionality finding is subject to a highly deferential standard of review. However, the Supreme Court and the legislative history for Section 285 also make it quite clear that it's intended to be reserved for the rare case in which it is necessary to prevent a gross injustice. And this case comes nowhere close to that line. We have shown four errors under the appropriate standards of review that collectively set a new and inappropriately low bar for exceptionality findings. First, the Court clearly erred in finding that VIAVI's pre-filing belief of infringement was premised solely on an improper rumor. Second, the Court erred in requiring too high a standard for our pre-suit investigation. Third, with respect to the manner in which we litigated the case, the Court did not find misconduct. It found that there was no knowingly reckless or bad-faith behavior. But the Court erred in finding that VIAVI needed to drop its case before discovery had occurred, and also clearly erred in finding that we continue to pursue the 11246 filter specifically. And finally, the Court ignored facts that show the strength of VIAVI's case and that show that we reasonably litigated this case, and that's required under the Octane's Totality of the Circumstances test. Turning to our reasonable belief of infringement, and this is detailed in pages 28 through 30 of our opening brief, VIAVI itself was a pioneer in this industry. We were the ones that... Can I ask you, what is the standard of review that applies? As I said at the very outset, it's abuse of discretion. So as it relates to... So here, I think you're arguing that there were some... I think you have to argue that there are some clearly erroneous fact findings, right? I mean, I don't see... Are you challenging any... Are you making any legal challenge at all? We are, Your Honor, and I tried to separate that out in the first four that I started, but let me try again. The two legal errors that we believe were committed, or three, excuse me, are, first, that the Court had too high of a requirement for our pre-suit investigation. It said that we had to have more than a reasonable belief, and it also suggested that we needed to do pre-litigation reverse engineering. That's clearly inconsistent with this Court's case law. Second, we believe that it was... What did you have? Excuse me? What did you have besides a rumor? What did we have besides a rumor? Let me first start by saying that we don't think that rumor is the appropriate word. We accept it if that's the word that the Court wanted to apply, but the point was it's actually company intelligence. It came directly from the companies that we work with in this supply chain. So it was employees from those companies that had told us that PTOT was, in fact, now qualified and making optical filters for the company. What evidence was there that... I mean, I understand your concern about the use of the word rumor. There is, though, the admission, I think, or use of that term, by your own corporate representative, I believe, where they said, you know, that word, maybe broadly that's true. So maybe the use of the word rumor wasn't great in the opinion, but what evidence do you have that you took any steps to confirm that any of these filters made their way into the United States? So I think that that, again, is part and parcel with whether or not there's a requirement for us to do reverse engineering. No, I just asked you a yes or no question. I didn't ask you to respond to my hypothetical, you know, tell me legally why that's incorrect. What steps were taken, if any? And it's okay if you're going to tell me there were none, but what steps were taken to see if this optical filter made it into the United States? The steps that were taken is that we had waited four months after the program had initiated sales in the United States, so there had already been tens of thousands of the final product in which these products are incorporated already sold in the United States. So it was that understanding. What was your basis on understanding that these filters were in the company's products sold in the United States? I mean, you know, assuming the company might sell all around the world, how do we know, how did you know that they made their way into the United States? I mean, I'm not saying you have to reverse engineer. I'm asking just that question. I believe, though, so we had the understanding that tens of thousands of these were sold, so we thought that it was reasonable given that we knew that we had a decrease in 10% and up to 20% of our sales were now being supplied by a competitor. So we had the understanding that probably something similar to that in terms of proportion was going to be found in the United States. The United States is clearly the company's largest market, and as I said again, there were already tens of thousands of these that had been sold. I think you have two issues. The first is that the district court found you didn't have evidence that the 11246 filter was actually in the devices in the U.S. What, if any, evidence did you have of that when you were filing the suit? So from the outset, we have said that we thought that it was the 11246 or a substantially similar filter, and I believe that there is significant evidence that that was going to be the case. What's the evidence? Sure. So it's five parts. First and foremost, we have their advertising. Their advertising, which is at Appendix Page 168, which says that they are one of the few manufacturers of these types of filters anywhere in the world, and specifically says that the key feature of their filters is that they are low angle shift. That is a key feature of our invention. What was the date of that advertisement? What we submitted was from their website, which was on the verge of us filing suit. It was one of the – So it was around August of 2020? Correct. It was in between. We captured it in between the ending of the release in the case, which was in May, and our filing of the complaint, which was in August. So it was exactly in that time frame. So that was the first piece of evidence. Again, overlapping with one of the key limitations in each one of the asserted claims. Then the next three pieces of evidence that we have are the declarations that were submitted. This is Brad Duffy, who was one of Yavi's key core technical personnel, and he explained the company's technical requirements and how specific they were. They were also overlapping with the limitations of the patent. I don't understand what that has to do with whether devices were sold in the U.S. that had the 11246 filter. So I'm trying to get right now at the fact that we believed that the filters that were sold were the 11246 or something substantially similar. I believe that in response to Judge Stoll's question that I already captured or explained the U.S. part of that. So getting back then to the 11246 filter or why it was going to be something substantially similar, these company requirements are strict. They were very strict in terms of the wavelengths that could be used. Even if you were correct on this, didn't the district court further find that after the Wu Declaration, you should have known that its position was clearly untenable and that you didn't withdraw or drop your claim at that point? He did, and we believe that that's both legally erroneous as well as based on clearly erroneous factual findings. We think that it's legally erroneous because this Court's case law, the Supreme Court's case law, is clear that in order to find judgment against a party, there should be substantial discovery that's taken place, and there had been none at this point in this case. We believe that we had a reasonable belief it would have been, and we've actually now shown that it was, in fact, supported by the discovery that we should have been able to achieve. But I want to talk for a minute about the positions that we took after that Wu Declaration. We did not continue to pursue the 11246 specifically, but what we said was... I didn't drop it. What we said was the Wu Declaration only says that the internal name for the 11246 filter, that specific product name, has not been sold, was not sold to the company. And so we, again, were trying to urge, but has... This is abuse of discretion, which is clear error. You didn't drop the claim. It's hard for me to conclude that there's an abuse of discretion under the circumstances you're describing. Maybe I would not have found the same way the district court did, but under the very deferential standard, you're in the weeds. But our main position after the Wu Declaration was that we were entitled to... That we were... That our infringement contentions, excuse me, were not so limited, and as I said, we should have been entitled to a broader scope of discovery. That was not decided until the motion to amend. And as soon as the motion to amend was not decided in our favour, we did, in fact, drop the case. But it was not unreasonable for us to take the position that our infringement contentions were broader, that we should have been able to get discovery on the full scope of the contentions until that had been decided against us. And immediately after... If I remember correctly, this is just... I remember correctly that the district court limited the award of attorney fees to certain time periods. It did not include anything that involved the time of pre-suit filing. It was limited to after the Wu Declaration. Is that something that matters at all as we think about the abuse of discretion? I don't think so for a number of reasons. One being, as I just said, that I don't think that the case became untenable, and I think it was legal error to find that it did before the motion to amend was. So I think that that was the point at which we needed to drop the case and absolutely did. And so I don't think that that is impacted because I think that that was incorrect as to when the case should have been dropped and when the award of... when the possibility was to find exceptionality. And then the other thing that I would say to that is, and this goes to the fourth point that I had, which is, again, legal error, that we don't believe the totality of the circumstances were applied here because there were a number of other factors that showed the strength of our case, that showed that we reasonably litigated, and none of those were considered within the analysis that the district court did. Can I ask you, do you think that the district court should have to explain all of its reasoning? I mean, in other words, because they don't mention those things, does that automatically mean that the district courts don't consider them? Because we have a lot of cases, of course, where this... There are a lot of cases where somebody makes a motion on this. Are we going to now require that the district court make sure they list every single consideration, every single argument that a party has made that has not been what's been required so far? I think that what is required is, like, under the love-and-care standard, that there has to be some way that we know that the court actually assessed those and actually did consider them in the totality of the circumstances. And when you look at this court's opinion, of the six factors that we say were ignored or not considered or not weighted in our favor the way that they should have been, not a single one of them appears after the court begins its analysis of the case. None of them. There's a couple of them that appear in the background section when he's going over the facts or when he's stating the positions of the party. But when he actually gets to the analysis... But why didn't that actually show that he was aware of them and that he considered them? Because it's all... It just didn't outweigh his view that this was, in fact, an exceptional case. Because if you look at the way that his opinion, again, breaks down, he says analysis, and he's only got two sections, and it follows directly from PTOT's view of the world in terms of what is relevant to consider. It's our pre-filing suit, and then it's in the way that we litigated the case. And then when he's analyzing, even when he's analyzing both of those, he does not consider any of these factors that we put forth that we thought that he should. And then he finally, at the end of that... So he doesn't consider them, he doesn't articulate them. He does not articulate any of them. And I do believe that the case law does not require a careful spelling out and an explanation of everything, but there does need to be some kind of blaze marks to suggest that he actually was, when he's doing and performing the analysis, considering all of these factors. Blaze marks. That's a funny word to use. Yes. And just very quickly, I know I'm into my rebuttal, I just want to explain what those are. We had... Just about every other competitor in this industry has licensed these patents. That shows the value of them. It shows the commercial necessity of our inventions in order to practice in this field. We were successful in defending numerous challenges at the PTAB. I guess I don't know what that has to do with this case at all. Which one? Any of what you're saying right now. Okay, so the licenses. I mean, what that shows is that in order to make a commercially viable optical filter for three-dimensional sensing, all of the competitors, other than PTOT, have come to us either... The fact that all the other competitors took a license, there are a lot of patent trolls out there that can solicit crazy little licenses from tons and tons of people. The fact that all their competitors took a license isn't indicative of the fact that they're selling a product in the U.S. that has an infringing filter in it. I believe that it does. So, again, going back to the declaration, some of which we talked about earlier, some of which we didn't, Marcus Bilger's declaration also explains how every filter that we have seen, including those from PTOT, all have to use hydrogenated silicon, which is, again, a key limitation of our patents and part of our patented invention. You didn't invent hydrogenated whatever-la-la. We were the ones, though, that first used it, that found the use for it, that we tuned it in specific ways so that it would achieve certain optical characteristics. What makes your case really different from other cases is the fact that there is a license agreement for PTOT to use the technology up until 2020, right? So that might have changed things and made it a little bit different. I mean, regardless of the greatness of your invention and all of that, right? Isn't that what makes it, like, a little bit different, in fact, than some other cases? No, that was actually, it was not a license. It was just a release for past behavior. Whatever it is, my point is that then there had to be some sort of consideration of making sure that whatever was, there was still a basis for accusing something. And what was that something? I mean, I'm not, I agree with the Chief that I wouldn't necessarily think this case was exceptional myself, but that's not my role as an appellate judge. I understand that, but I believe, again, that the Court erected too high of a requirement in the pre-filing investigation. It suggested that we had to have more than a pre-filing belief. That's inconsistent with this Court's case law. It suggested that we did need to do this reverse engineering. Okay, so we better save or restore some rebuttal time. Thank you. Let's get on to Mr. Sommer. Thank you, Your Honors. May it please the Court, Andrew Sommer, on behalf of Platinum Optics Technology, Inc. I'd like to speak to the deferential standard of review. This district court judge lived with this case for three years. He saw, blow by blow, what had happened in connection with motions to stay, motions to compel discovery, motions for attorney's fees. Did he suggest any of this in the opinion? I'm sorry? Did he suggest any of this in the opinion? Did he suggest in the opinion that there was some sort of litigation misconduct or dilatory behavior or bad actions with regard to motions to discovery and other things that led him to conclude it was an exceptional case? He did not find explicit malfeasance, Your Honor. So there was a motion for attorney's fees under 28 U.S.C. 1927. But I guess I'm just trying to get to the, you said he lived with this case, and I'm very sympathetic to that concept in general, especially with district court judges. But the things you're pointing at right now are not things that he articulated as part of the basis for reaching his conclusion at all. I see that nowhere in his analysis or even a suggestion of it. I'm not using that to say that his analysis was correct. What I'm saying is there's reason for deference. He had a front row seat to what happened here. What he did find is that the pre-suit investigation was wanting. He didn't say it was objectively baseless in and of itself. He said you should have done more under these circumstances. Instead, what happened was they took an exhibit. We might as well refer to it as Exhibit 1, which was 11246. It's a notary seal from a filter that they bought in China in 2018. They had reverse engineered in 2019, and they knew they had released by an agreement that was effective for all filters that were made and sold before April 29, 2020. You moved for sanctions, didn't you? I believe there was a sanctions motion in the district court, yes. And he rejected that, did he not? He did, yes. And that is not on appeal. I'm just going through your... He may have thrown the book, but he didn't throw the biggest book he could have. That is absolutely true. I think there was a request for him to throw a bigger book, and he denied that request. Well, both in terms of sanctions and in terms of the scope of the award for exceptional case, right? You wanted everything, and he gave you only a sliver. That's true, Your Honor. And the triggering event in Judge Dabala's mind was this Wu Declaration. The Wu Declaration says, look, the filter that's in your complaint, the filter that's in the only claim charts in your infringement contentions is not one that we have made since the release, and it's not one that we've sold in the release, and we've never sold it to the company that's at issue. At that point in the case, Judge Dabala concluded, look, it became unreasonable for you to maintain that, and there's no question that they continued to maintain that. They moved to amend infringement contentions. Among those are three claim charts. That chart, 11246. And that was one of the problems that the district court judge had kind of with the contentions all along, is that the contentions, the claim charts, there's two parts that are relevant to his analysis. One is the identity of the accused products. This is under Local Rule 3.1b. They identified the 11246 and then other filters, substantially similar is what they said. So that's the identification of the accused products. But beyond that is the obligation to put us on notice by providing a claim chart showing exactly where each of the limitations is found in the accused product. And the claim chart only says stuff about 11246 and relies on a reverse engineering report that was prepared in 2019. Did they at any time rely on the company's technical requirements instead of relying on an accused product? I don't think they did. So it is my understanding that the obvious argument has been that the company's technical requirements are germane to whether there is infringement. But they didn't, like, chart those. This is not a standards case, as you would think of, like in Pugetsu, Netscare, or some of the other cases, Golden Bridge, for example, where you've charted a claim against a standard. You're saying it's not possible to do that. My understanding is it is not. I have read these technical specifications. There are numerous claim limitations that are not found in that technical specification. And there's a lot that go beyond what are required by the claim. So, you know, there is an argument that's been made in the briefing. Oh, well, we had a technical basis. It was our understanding that you could not technically comply with the requirements that are in here without practicing our patent. And we had concluded that the 11246 filter itself had implemented that standard. If you look at the standards in the record, there is no way to tell whether that filter practiced the entirety of that standard. So, you know, there is this argument that their belief was reasonable because that filter that they had in their possession from the China litigation both practiced the claim in their view. We disagree, but that's their view. And also complied with that technical specification. And you cannot tell if you look at the technical specification, there's all kinds of requirements about wafers and reflectivity and stuff that's not germane at all to this patent. Temperature sensitivity, humidity requirements that are required by this company to make sure that these things are rugged and will not degrade over time and whatnot. There's nothing in the record that shows that they actually did that analysis to say, oh, well, you must have been selling 11246 to company because you could meet company specifications with it. That's the argument that I hear counsel making. What I hear you saying is that the specifications were more specific than the claim. So maybe I'm misunderstanding, but to me that doesn't work. It would have to be that there's something in the claim that's not in the specifications. I think it goes both ways, Your Honor. Okay. So if you can look at Mr. Duffy's declaration, for example, he said, oh, company used to specify center wavelength shift, but they don't anymore, and that the specifications at issue do not include that requirement. But he understands that it's still kind of this unwritten requirement. And then in Mr. Bilger's declaration, he says, well, we don't think anyone can meet the specification without using a specific claimed material, hydrogenated silicon. As Judge Moore may have alluded to, they did not invent hydrogenated silicon, nor were they the first to use it in optical filters. If you look at the claims, the claims require very specific optical properties of the hydrogenated silicon. They invented a new hydrogenated silicon material, if you read the patents. So nothing is said about that. They just said, well, we think that you need to use hydrogenated silicon, therefore we think our basis for allegations of infringement are reasonable. In terms of gross injustice, which is a phrase that's mentioned by the Supreme Court in the Octane Fitness case, our view is we lost the benefit of a bargain that we made to settle and resolve two litigations in Asia when three months after the settlement or four months after the settlement, we were sued, and the claim charts attached to that particular complaint were exactly what we were facing in Asia. So that is unjust. It is unfair. We ended up moving for early summary judgment because we knew that filter had not been sold for years. And they did not have a basis to oppose it. It was well taken if their contentions were limited. And they maintained that opposition. I think you can even find reference to it in their motion to dismiss. They said, we still oppose summary judgment, even after their contentions motion was denied. I'd like to address the VIAVI favorable factors issue briefly because we think that there's a lot of new stuff coming up on appeal in the brief. We argued in our red brief that most of the points that were raised were not raised to the district court. In fact, there are new pieces of the appendix that were not before the district court. My understanding of the argument is, well, those are in a related case asserting the same patents, and they're before the same judge. Your Honors, I'm unaware of any case that requires a judge to sift the record to find favorable evidence that isn't brought to his attention, let alone sifting the record in another case to find favorable evidence to weigh the totality of the circumstances. There were three arguments made to the district judge in the motion for fees or the exceptional case declaration. That was licensing activities, success at the PTAB, and that VIAVI had since confirmed its belief. And as to the confirmation of belief, the district court squarely addressed it and said, look, that doesn't absolve you of these other flaws in your case. And unless Your Honors have any additional questions for me on the record, because I know it's a little complicated and, quite frankly, it's procedurally confusing to me as well, as to what happened because motions were filed and then deducted and refiled, I'm happy to answer anything you may have. Otherwise, we ask that the district court be affirmed. Thank you, Mr. Sonner. Ms. Woodworth, we'll restore two minutes for Bob Sonner. Thank you. Just three points in response to counsel's argument. The first related to, again, the Wu Declaration and whether that was the appropriate point in the sand. The Wu Declaration, and it was acknowledged by counsel that the understanding from VIAVI was that our contentions included substantially similar filters. The Wu Declaration says absolutely nothing about that. And the two times in the case and on the record where we did try to get confirmation from PTOT that there was nothing substantially similar sold after the release and to the company, they declined both times. Those are in the record at 1283 to 84, as well as in response to the summary judgment at Appendix 1890. The second point was counsel said that the summary judgment motion was well taken if the contentions were so limited. This again goes back to the fact that it was not decided that the contentions were so limited until after the motion to amend. At that point, the summary judgment was well taken. And at that point, we did, in fact, drop the case. And then the third fact, or the third point with respect to the VIAVI favorable factors. Again, not a single one of the citations that counsel had was anywhere in the analysis. There was nothing that the court looked at. Did he correct the stuff that you put in the appendix on this point? It wasn't before the district court in this case? No, with one exception. Every one of the points that was made was made in our brief in opposition to motion for attorney's fees. So we had actually, in fact, cited some of it in footnotes, but cited to that evidence with one exception. The one exception is one document that shows, in fact, that the company's sales are mostly in the United States. So we had made that point both in our brief to the district court as well as in the argument on the opposition to fees. Is the point about, hey, it's not exceptional because it turns out we were right? No, it's just specific to the point about whether or not there was reasonable belief that this product was in the United States. And we had argued to the court that the majority of the sales of the product are in the United States. That's evidence you got, though, after the fact, right? It was actually a publicly available document that was talking about sales in the 2014. Was it after the fact? The document itself was not. It was submitted afterwards. Was your discovery of the document after you filed? It was submitted afterwards. I think that's answering your question. All right. Thank you. I apologize if I misunderstood. Thank you. Thank all counsel. This case is taken under submission.